UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
:
:
IN RE 650 FIFTH AVENUE AND RELATED  :  08 Civ. 10934 (KBF)
PROPERTIES                          :
:  OPINION & ORDER
:
:
:
:
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

More than four years after the commencement of this litigation and the execution of a search warrant, two of the claimants to this in rem forfeiture action, the Alavi Foundation and 650 Fifth Ave. Co.[1] (collectively, "Alavi") have moved to suppress a wide swath of evidence seized from their offices on December 19, 2008. The motion comes on the eve of trial set to begin September 16, 2013. Prior to this motion, Alavi had not raised any concern regarding the search of its offices, apart from concerns that privileged materials had been seized.

In the end, the suppression motion is entirely academic. The motion asks the Court to analyze whether documents obtained voluntarily from Alavi by way of routine civil discovery in the Government's civil forfeiture action, which were also obtained via execution of a search warrant in a separate criminal investigation, are subject to suppression in the forfeiture action.

---

[1] 650 Fifth Ave. Co. is a partnership formed in 1989 between Alavi's predecessor, the Mostazafan Foundation, and Assa Corp.

1

Alavi asks the Court to go back in time to a counter-factual world and rule that the criminal investigation and civil forfeiture action were one and the same, that the documents at issue were not separately produced (which they were) in the civil litigation, and that they have not been used without objection for years (they have been). In this counter-factual world, according to Alavi, the material seized by the FBI for the criminal investigation and later voluntarily reproduced by Alavi in the forfeiture and related actions brought by private judgment creditors ("Judgment Creditors") must be suppressed. The Court declines the invitation to enter into a counter-factual world. It chooses instead to remain in this world – a world in which this civil litigation has proceeded for almost five years and which is ripe for final resolution. The motion to suppress is denied.[2]

Alavi's sudden challenge to the same documents that it produced voluntarily in civil litigation – the same documents that have been used by at least ten separate

---

[2] As set forth below, many of the documents as to which Alavi seeks an order of suppression were in fact produced by Alavi as civil discovery not only in the Government's forfeiture action, but also in related consolidated cases brought by the Judgment Creditors. The same documents have been marked by both the Government and the Judgment Creditors as trial exhibits and are expected to be used for joint evidentiary presentations at trial. Alavi has not moved to suppress the use of the documents by the Judgment Creditors – it seeks only an order preventing the Government from using the documents. The separate cases brought by the Judgment Creditors that have been consolidated into case number 08 Civ. 10934 include: Actosta et al. v. Assa Corp. et al., No. 10 Civ. 2464 (KBF)(S.D.N.Y.); Beer et al. v. Islamic Republic of Iran et al., No. 13 Civ. 1848 (KBF)(S.D.N.Y. 2013); Beer et al. v. Islamic Republic of Iran et al., No. 12 Misc. 20 (KBF)(S.D.N.Y. 2012); Beer et al. v. Islamic Republic of Iran et al., No. 12 Misc. 21 (KBF)(S.D.N.Y. 2012); Greenbaum et al. v. Assa Corp. et al., No. 09 Civ. 553 (KBF)(S.D.N.Y. 2009); Greenbaum et al. v. Assa Corp. et al., No. 09 Civ. 564 (KBF) (S.D.N.Y. 2009); Hegna et al. v. Islamic Republic of Iran et al., No. 11 Civ. 3761 (KBF)(S.D.N.Y. 2011); The Estate of Michael Heiser et al v. 650 Fifth Avenue Company et al, No. 13 Misc. 71 (KBF)(S.D.N.Y. 2013); Kirschenbaum et al. v. Islamic Republic of Iran et al., 12 Misc. 19 (KBF)(S.D.N.Y. 2012); Kirschenbaum et al. v. Islamic Republic of Iran et al., 12 Misc. 22 (KBF)(S.D.N.Y. 2012); Kirschenbaum et al v. ASSA Corporation et al., No. 13 Civ. 1825 (KBF)(S.D.N.Y. 2013); Miller et al. v. Alavi Foundation et al., No. 09 Civ. 166 (KBF)(S.D.N.Y. 2009); Peterson et al. v. 650 Fifth Ave. Co. et al., No. 10 Civ. 1627 (KBF)(S.D.N.Y. 2010); Rubin et al. v. Alavi Foundation et al., No. 09 Civ. 4614 (KBF)(S.D.N.Y. 2009); Rubin et al. v. Alavi Foundation et al., No. 09 Civ. 4784 (KBF)(S.D.N.Y. 2009); Rubin et al. v. Alavi Foundation et al., No. 09 Civ. 165 (KBF)(S.D.N.Y. 2009).

groups of civil litigants and the Government for four years without objection – is without merit. As discussed further below, the fact that those documents happened to be a subset of the documents seized during the execution of a criminal search warrant is not relevant to their availability for use in the forfeiture action. As the criminal investigation and the civil complaint are separable, the Court need not engage in an unreasonable search and seizure analysis under the Fourth Amendment.

I. RELEVANT BACKGROUND

The docket for this consolidated action contains more than 800 entries, reflecting nearly five years of active litigation and many decisions of this Court, including dozens of decisions on discovery-related issues. The trial is scheduled to commence in only a few days from the date of this Opinion; as that date has drawn closer, the frequency of motion practice has increased. Given the abundance of factual background supplied in the record, the Court will recite only those facts necessary to place this motion into proper context and resolve the issues raised by the respective parties.[3]

---

[3] The Court's prior decisions include, inter alia, the following: In re 650 Fifth Ave., No. 08 CIV. 10934 (KBF), 2013 WL 4572527 (S.D.N.Y. Aug. 27, 2013)(dismissing claims of certain forfeiture claimants for lack of standing); In re 650 Fifth Ave., No. 08 CIV. 10934 (KBF), 2013 WL 3863866 (S.D.N.Y. July 25, 2013)(denying Government motion to pierce the Attorney-Client privilege via the Crime-Fraud exception); In re 650 Fifth Ave., No. 08 CIV. 10934 (KBF), 2013 WL 2451067 (S.D.N.Y. June 6, 2013)(granting partial summary judgment to Judgment Creditors against defendants Assa Corp. and Assa Co. Ltc. on TRIA claims); In re 650 Fifth Ave., 881 F. Supp. 2d 533 (S.D.N.Y. 2012)(denying defendant-claimants' motions to dismiss Judgment Creditor actions); In re 650 Fifth Ave., No. 08 CIV. 10934 (RJH), 2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011)(denying defendant-claimants' motion to stay), reconsideration denied, No. 08 CIV. 10934 (RJH), 2012 WL 363118 (S.D.N.Y. Feb. 2, 2012); In re 650 Fifth Ave. & Related Properties, 777 F. Supp. 2d 529 (S.D.N.Y. 2011)(denying motion to dismiss forfeiture action).

A. <u>The Civil Forfeiture Action</u>

The United States commenced this <u>in rem</u> forfeiture action on December 17, 2008. (Compl., ECF No. 1.) That initial complaint sought forfeiture of assets owned by Assa Corporation, Assa Company Ltd. (together, "Assa"), and Bank Melli Iran ("Bank Melli"). The complaint sought, <u>inter alia</u>, forfeiture of Assa's ownership interest in the real property and appurtenances located at 650 Fifth Avenue, New York, New York. Forfeiture of Alavi's assets, including its ownership interest in 650 Fifth Avenue, was not sought in the initial complaint. The Government first sought forfeiture of the interests of Alavi and 650 Fifth Avenue Company in a Verified Amended Complaint ("VAC") filed November 16, 2009. (Am. Verified Compl., ECF No. 51.)

However, Alavi and 650 Fifth Ave. Company were named in a Post-Complaint Protective Order pursuant to 18 U.S.C. § 983(j)(1), entered by the Court the same day that the Government filed its initial <u>in rem</u> forfeiture complaint. (Protective Order, ECF No. 2.) That Protective Order provides, <u>inter alia</u>:

> (2) All persons and entities having actual knowledge of this Protective Order shall not, directly or indirectly, destroy any documents relating in any manner or part to the allegations in the Complaint, including but not limited to the <u>books and records of the Fifth Avenue Company, the Pahlavi Foundation, the Mostazafan Foundation, the Alavi Foundation</u>, Assa Company Ltd., and/or Bank Melli.
>
> Maintaining the Property
>
> (3) The Management Company and the <u>Fifth Avenue Company</u> shall <u>maintain all books and records in their possession, custody and/or</u>

4

<blockquote>

control, that relate in any manner or part to the <u>Fifth Avenue Company</u>, the Mostazafan Foundation, the <u>Alavi Foundation</u>, Assa Corporation, Assa Company Ltd., Bank Melli and/or the allegations in the Complaint.

\*   \*   \*

(6) <u>The Fifth Avenue Company</u> and the Management Company shall <u>make available for inspection to the United States</u>, or its designee, the <u>books and records of the Fifth Avenue Company</u> . . . .

</blockquote>

(<u>Id.</u> ¶¶ 2, 3, 6 (emphases added).)

### B. <u>The Criminal Investigation</u>

On December 17, 2008 – the same day the civil forfeiture complaint was filed – the President of the Alavi Foundation, Farshid Jahedi, was served with a grand jury subpoena as part of a criminal investigation into violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, and two anti-money laundering statutes, 18 U.S.C. §§ 1956, 1957. (Grand Jury Subpoena ("Alavi Subpoena"), Decl. of AUSA Carolina A. Fornos ("Fornos Decl.") Ex. 4.) This subpoena was directed to Alavi and commanded Alavi to produce documents relating to Assa Corporation, Assa Ltd., Bank Melli and 650 Fifth Avenue from January 1, 1989 to the present – a narrower timeframe than is at issue in the civil forfeiture litigation. (<u>Id.</u>)

The day after the Alavi Subpoena issued – December 18, 2008 – FBI agents observed Jahedi discarding torn documents into a public trash can. Reconstruction of these documents indicated that they were among those required to be produced in

response to the Alavi Subpoena; those documents separately happened to be responsive to the Protective Order. (See Photographs, Fornos Decl. Ex. 5.)[4]

The following day – December 19, 2008 – the FBI sought, obtained and executed a search warrant for the offices of the Alavi Foundation and 650 Fifth Ave. Co. (Search Warrant of Dec. 19, 2008 ("Warrant"), Fornos Decl. Ex. 1.) The warrant incorporated an affidavit by FBI Special Agent George J. Ennis (Warrant at SDNY-0733544) which, in turn, incorporated the Government's initial forfeiture complaint (Aff. of Agent George J. Ennis ¶ 4, Warrant at SDNY-0733547).

During the execution of the search warrant, the FBI obtained, inter alia, the books and records of Alavi and 650 Fifth Avenue that have subsequently been used in the forfeiture litigation and form the basis for many of the factual allegations in the VAC. Among those books and records seized in the execution of the criminal search warrant were those required to be maintained pursuant to ¶ 3 and provided for inspection in ¶ 6 of the Protective Order that had been entered as part of the instant civil forfeiture litigation.

C. Judgment Creditors' Actions

On December 24, 2008, one week after the Government filed its in rem forfeiture action, the Greenbaum judgment creditor group filed the first of what became a series of actions by various judgment creditors to execute upon the 650 Properties. (See Compl., Not. of Removal Ex. A, Greenbaum et al. v. Alavi Foundation et al., No. 09 Civ. 553, ECF No. 1.) The Greenbaum action named both

---

[4] It is irrelevant to the resolution of this motion that Jahedi was arrested and subsequently pled guilty and served jail time for obstruction of justice with respect to his actions.

6

Alavi and 650 Fifth Ave., as well as Assa, as defendants. (Id.) As to Alavi, it alleged, inter alia, that "[u]pon information and belief, Iran exercises day-to-day control over the operations of the [Alavi] Foundation by and through its president, Jahedi Farshid." (Id. ¶ 11.) The Greenbaum complaint – as with the subsequently filed Judgment Creditor actions – seeks execution and turnover of the 650 Properties owned by Alavi and Assa pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7), and § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002).

D. Document Production for the Civil Litigations

On January 6, 2009, counsel for Alavi and the 650 Fifth Avenue Company, Daniel S. Ruzumna (who has remained as counsel to those entities to the present), wrote to counsel for the Government in the civil forfeiture litigation. In that letter, he stated, "I write to address certain production requirements set forth in the December 17, 2008 Post-Complaint Protective Order (the 'Protective Order')." (Letter of Daniel S. Ruzumna, Esq., to AUSA Sharon Levin ("Ruzumna Jan. 2009 Letter"), Jan. 6, 2009, Fornos Decl. Ex. 3.)

Mr. Ruzumna further stated, "[w]e understand the Fifth Avenue Company's obligations under the Protective Order and will produce any responsive documents and information, to the extent not already produced, as soon as we are able to do so." (Id. (emphasis added).) The production to which he referred was the seizure that occurred in connection with the criminal investigation. (Id.) In essence, counsel acknowledged that the documents subject to the civil document production

7

requirements in the forfeiture complaint that pre-dated the December 19, 2008, search were a subset of those documents seized for the criminal investigation. In substance, he explicitly relied upon the seizure to fulfill his civil production obligations.

As the forfeiture and Judgment Creditor actions progressed, the Court entered an order in March 2010 that consolidated the litigations for pretrial purposes. (Order, March 16, 2010, ECF No. 30.) Following that consolidation, on June 24, 2011, the Government and certain groups of the Judgment Creditor plaintiffs served a consolidated discovery request on Alavi and the 650 Fifth Avenue Company. (First Set of Consol. Doc. Requests to Claimants The Alavi Foundation and 650 Fifth Ave. Co., Fornos Decl. Ex. 20.) The consolidated discovery request represented that the document requests were being made "on behalf of [the Government] and the private plaintiffs in this consolidated action." On May 31 and June 28, 2012, Alavi produced a set of documents back to the Government and the Judgment Creditors in response to those requests – the Bates stamps on the documents produced simultaneously to the Government and Judgment Creditors on June 28 indicate that they are a subset of those seized in the December 2008 FBI search.[5] (See Letter of Krista D. Adler, Esq., to counsel, June 28, 2012, Fornos Decl. Ex. 22.) Again, Alavi has not moved to suppress those documents which it provided

---

[5] At the September 4, 2013, final pretrial conference in this matter, the Government agreed to remove from its exhibit list any documents obtained in the FBI search that were not later reproduced by Alavi in civil discovery; at trial, the Government will thus rely only upon those documents produced for the forfeiture action. (See Tr. of Sept. 4, 2013, Hear'g at 85-89.)

8

simultaneously to the Judgment Creditors – a mirror set of those at issue on this motion.

More than three and one half years passed between the FBI December 2008 search and counsel's January 2009 acknowledgement and reliance on the documents so seized, and the June 2012 production of those documents under the Protective Order in the forfeiture litigation. More than a year passed between that June 2012 re-production of the documents and the first complaint to the Court by Alavi and 650 Fifth Ave. Co. about the initial seizure. By the time Alavi and 650 Fifth Ave. Co. brought this motion to suppress, counsel for Alavi and 650 Fifth had himself relied upon the documents seized to fulfill certain obligations, and reproduced those same documents to two sets of litigants.  Counsel acknowledged as much in the final pretrial conference on September 4, 2013 – several weeks after the filing of the suppression motion – in arguing that several privileged documents taken in the search should not be admitted as trial exhibits because they are among a "handful of documents that were not produced in civil discovery" and that "[t]he documents returned to [Alavi and 650 Fifth Ave. Co.] were returned to us so we could make discovery of these." (Tr. of Sept. 4, 2013, Hear'g at 86, 88.)

At a February 1, 2013, status conference, counsel for Alavi and 650 Fifth Ave. Co. requested that the Court try the Government's in rem forfeiture action and the Judgment Creditors FSIA / TRIA actions separately.[6] (Tr. of Feb. 1, 2013 Hear'g at 78-82, ECF No. 361.) The parties briefed the degree to which the factual

---

[6] Counsel also requested that the Court adjudicate the relative priority of the Government's potential forfeiture verdict as against a finding for the Judgment Creditors on their FSIA / TRIA actions; the Court declined to make determinations at to priority prior to trial.

9

presentation between the matters would overlap.[7] (See ECF Nos. 359, 366, 367.) That briefing made clear that all major witnesses and proof as between the two actions would substantially overlap and that it would promote judicial efficiency for the actions to be tried together. On March 15, 2013, the Court ordered that the actions be consolidated for trial. (ECF. No. 370.)

As the Court recently ordered, the in rem forfeiture action will be tried before a jury and the Judgment Creditors' TRIA / FSIA actions shall be simultaneously tried to the bench. To save judicial resources and promote efficiencies for the parties and witnesses, the Court ordered that all overlapping evidence should be presented in the forfeiture action; if additional evidence is needed and irrelevant to that action, it will be tried to the bench outside of the presence of the jury. (See Order, ECF No. 810.) Thus, the same documents that were produced to both the Judgment Creditors and the Government in the civil litigation are being used jointly during the trials. (As stated above, Alavi has not moved to suppress any use of the documents by the Judgment Creditors in their actions.)

Notably, no criminal indictment has issued against Alavi or 650 Fifth Ave. The search warrant was issued and executed in connection with a criminal investigation which is therefore not a part of this trial.

---

[7] Both the civil forfeiture claim and the Judgment Creditors' TRIA and FSIA actions will require proof of the relationships and transactions between the Alavi, Assa, 650 Fifth Ave. Co. and the Government of Iran and its agencies and instrumentalities, such as Bank Melli, the Bonyad Mostazafan, and the Iranian Mission to the United Nations. The parties through their witness and exhibit lists submitted for trial have indicated a great deal of overlap – few, if any, witnesses are likely to be called by the Judgment Creditors who are not also on the Government's list of likely witnesses.

E. <u>Discussion</u>

Alavi argues that the search warrant executed on December 18, 2008, lacked probable cause and particularity, and that the search exceeded even the scope of the overbroad warrant, all in violation of its Fourth Amendment rights. It further argues that, were the Court to find the warrant defective, the Court must hold a hearing to determine whether the Government can demonstrate that the documents at issue would have been inevitably discovered through other, non-defective means – a burden, Alavi says, that the Government cannot meet.

At oral argument on this motion, this Court questioned why this motion is not academic in light of the separate preservation and production obligations which were in place prior to the execution of the search warrant for the same documents. Indeed, that the very same documents were at issue was plainly demonstrated with the re-production in 2012 of those documents (minus a few that were privileged) in response to civil discovery demands.

After careful consideration of Alavi's arguments in response, the Court finds that the separate and preexisting civil discovery retention and production requirements obviate the need for any Fourth Amendment analysis. Key to this finding are (1) the breadth of the Post-Complaint Protective Order, (2) the preservation obligations imposed by the original forfeiture complaint, and (3) the fact that the documents at issue were re-produced in 2012 without objection as to their relevance or provenance.

As to the first two points – the Protective Order and preservation obligations – as of the filing of the Government's in rem forfeiture action on December 17, 2008 (if not sooner), Alavi had common law obligations to preserve all of its relevant business records for production. See Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998)("[The] obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation-most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y.2003) ("Zubulake IV"); see also Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.") (citing Kronisch, 150 F.3d at 126).

Alavi thus had a duty to preserve its books and records at least as of December 17, 2008, when the initial forfeiture complaint against Assa and its interest in 650 Fifth Ave. Co. was filed.

But Alavi's responsibility went even further: the Protective Order of December 17, 2008, also required it to permit the Government to inspect the entirety books and records of Fifth Ave. Co. in connection with the forfeiture litigation. (Protective Order ¶¶ 4, 6, ECF No. 2.) Counsel for Alavi and 650 Fifth

Ave. acknowledged this obligation and complied by negotiating with the Government the return and re-production of the nonprivileged documents seized in the criminal search. (See Ruzumna Jan. 2009 Letter.)

Alavi argues that the Government did not have a good-faith basis to amend its forfeiture complaint to name Alavi and 650 Fifth Ave. Co. prior to obtaining the books and records of the two entities via the 2008 search. If, as Alavi alleges, the search violated the Fourth Amendment, then the documents must be suppressed and the Court must assume that the Government would never have had a factual basis upon which to amend its complaint. Thus, this action never would have sought the forfeiture of Alavi's interest in the 650 Properties and the Government cannot now place the seized documents in evidence to prove up its case against Alavi.

Alavi's argument simply distorts the chronology of this case and the scope of the Court's prior orders; Alavi was under a pre-existing duty prior to the 2008 search to provide its books and records to the Government for inspection – all of them. It cannot argue that the Government would not have had a factual basis to add Alavi as a named defendant absent the search; the Government had the right to the full set of documents irrespective of the search, as the result of both the Protective Order and the common law document preservation requirements. Even on Alavi's version of the fact, those same documents gave rise to the allegations in the VAC. In addition, Alavi ignores that the first action against it was filed by the Judgment Creditors on December 28, 2008 – long before the Government's VAC was

filed.  This and the other actions have been, as stated above, consolidated with that of the Government for pretrial purposes and for trial.

Alavi argues in response that it would have sought to narrow the scope of the production required by the "all books and records" provision of the Protective Order to cover only the allegations of the initial forfeiture complaint.  It argues that complaint covered only the post-1989 period.  Irrespective of whether that characterization of the complaint is correct, counsel did not make such an argument in the January 2009 letter – prior to the filing of the Verified Amended Complaint.  Rather, Alavi agreed to a full re-production of the seized documents back to the Government for the civil action, minus those withheld on the basis of privilege.  It did not state that the "all books and records" provision of the protective order was overbroad.  Mr. Ruzumna's acknowledgement in the January 2009 letter that he would fulfill production obligations under the Protective Order was not made under any protest or reservation of rights with respect to the seizure – rather, it was relying on the fact of the seizure to demonstrate compliance with court ordered obligations.

By failing to so object, Alavi waived any such objection now.  That the Government subsequently filed its VAC containing allegations found in the seized documents is irrelevant.  Alavi was under an obligation to make available all of its books and records as of December 17, 2008; and Alavi did eventually produce those books and records back to the Government without objection, indicating that the Government would have had a factual basis to amend its forfeiture complaint even

absent the 2008 search.[8] The Fourth Amendment is not implicated by this set of facts.

However, even assuming that the Court were to conduct an inquiry and find that the warrant and 2008 search were defective, its analysis of the inevitable discovery doctrine would arrive at the same conclusion.

The inevitable discovery doctrine allows the Court to admit unlawfully seized evidence where "the disputed evidence inevitably have been found through legal means". United States v. Heath, 455 F.3d 52, 55 (2d Cir. 2006). "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred. . . . [P]roof of inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." United States v. Eng, 997 F.2d 987, 990 (2d Cir. 1993)("Eng II")(quoting United States v. Eng, 971 F.2d 854 (2d Cir.1992) ("Eng I")).

As to Alavi, such historical facts exist and demonstrate inevitable discovery. The pre-existence of civil litigations which each carried common law preservation obligations, the production obligations under the Federal Rules of Civil Procedure, and the fact that Alavi failed to object to the scope of those obligations and actually produced the disputed documents moot the constitutional question central to this

---

[8] To conclude that a sufficient factual basis for the Verified Amended Complaint existed, then, the Court need not address the Government's arguments that it was engaged in an investigation of Alavi sufficient to bring a forfeiture action before either the initial forfeiture complaint was filed or the seizure occurred.

motion. The very same documents that had to be produced before the search warrant ever came into existence were produced – twice.

Alavi insists that, under Eng, the Court must hold an evidentiary hearing to determine whether the Government can meet its burden of proof as to inevitable discovery. Such a hearing would require the presence of contested material issues of fact for the Court to sort out. In short, however, there is no such contested issue. All of the Alavi documents that were seized and are discoverable in the forfeiture matter have been separately produced – both to the Judgment Creditors in these consolidated proceedings without objection, and to the Government, without reference to the search warrant.[9] The breadth of the Protective Order and Alavi's document preservation obligations are such that the Government was entitled to discovery of Alavi's books and records prior to the search; the search, even if constitutionally deficient,[10] did not alter that right. This case is distinguishable from Eng, where the Government relied upon its subpoena power to prove inevitable discovery. Eng I, 971 F.2d at 859-61. In Eng I, the Second Circuit cautioned that a district court must carefully trace the chain of discovery, since subpoenas do not always elicit positive responses (id.); here, however the chain of

---

[9] Alavi, 650 Fifth and Assa refer to a variety of extraneous documents that were gathered during the allegedly unlawful search. These documents (e.g., student financial aid documents, Alavi employees' 401(k) statements, etc.) are not at issue in the instant proceeding and, even if relevant to the constitutional breadth of the search, would play no role in any evidentiary proceeding regarding inevitable discovery. Similarly, the fact that attorney-client materials may have been gathered during the execution of the search warrant proves nothing as regards inevitable discovery: those documents are not at issue in the instant proceeding and presumably were not reproduced in 2011 – if they were reproduced, any privilege would have been waived.

[10] The Court reiterates that it makes no findings as to the validity of the warrant or the scope of the search.

discovery is uncontested and demonstrates that the Government had an independent entitlement to the documents at issue.

This finding is consonant with the policy and practice of the Fourth Amendment. As the Supreme Court has observed, "[T]he exclusionary rule is designed to deter police misconduct . . . . [I]t should not be applied[ ] to deter objectively reasonable law enforcement activity." United States v. Leon, 468 U.S. 897 (1984)(explaining good faith exception whereby evidence obtained pursuant to a defective warrant may nevertheless be admissible). Rather, "[a]s with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." Id. (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).

This is not a case of Government overreach. The Court cannot ignore the fact that, at no time prior to making this motion had Alavi or 650 Fifth Avenue raised the legality of the search warrant as an issue in the civil litigations. In addition, Alavi made no motion to preclude the use of the documents by the private Judgment Creditors in their actions. Rather, the Judgment Creditors are using the very same documents produced to both them and the Government in the consolidated trials; those same exhibits have been marked in both proceeding for efficiency as single trial exhibits for both the jury and bench trials. Any worry that the Government sought to unlawfully seize documents for the purpose of the forfeiture litigation is assuaged by the fact that Alavi has voluntarily produced these very same

documents to the private plaintiffs.  The Government's conduct in the civil forfeiture action here is not the conduct the Fourth Amendment is meant to deter.

CONCLUSION

For the reasons set forth above, the motion of the Alavi Foundation and 650 Fifth Ave. Co. for suppression of evidence is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 535.

SO ORDERED.

Dated:   New York, New York
         September 9, 2013

*[signature]*

KATHERINE B. FORREST
United States District Judge
